IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN W. PIEPER,<br><br>    Plaintiff,<br><br>  v.<br><br>DIANE J. SABATKA-RINE, Warden at the Nebraska State Penitentiary, in her individual capacity; MARIO PEART, former L.C.C Warden, in his individual capacity; CATHY SHEAIR, Deputy Warden, in her individual capacity; RICK HARGREAVES, former L.C.C. Unit Administrator, in his individual capacity; MATT TRACY, Unit Administrator at the Nebraska State Penitentiary, in his individual capacity; PAULA SPARKS, former Captain at L.C.C, in her individual capacity; SALVADOR CRUZ, L.C.C Unit Manager, in his individual capacity; AMANDA CHADWICK, L.C.C. Unit Manager, in her individual capacity; WAYNE CHANDLER, Behavior Health Programs Manager, L.C.C. Mental Health, in his individual capacity; DR. ELIZABETH GEIGER, Psy.D., Clinical Psychologist Supervisor, N.S.P., in her individual capacity; BRANDY LOGSTON, V.R.P. Clinical Program Manager at Tecumseh State Prison, in her individual capacity; KERRI PAULSON, Licensed Mental Health Practitioner, in her individual capacity; MARY BRUYETTE, Intel-Secretary, in her individual capacity; and MATT HECKMAN, former Deputy Warden, in his individual capacity;<br><br>    Defendants. | **4:18CV3018**<br><br>**ORDER** |

Plaintiff John W. Pieper ("Pieper") is an inmate incarcerated at the Lincoln Correctional Center ("LCC") in the Nebraska Department of Correctional Services ("department"). Defendants Diane J. Sabatka-Rine ("Sabatka-Rine"), Mario Peart ("Peart"), Cathy Sheair ("Sheair"), Rick Hargreaves ("Hargreaves"), Paula Sparks ("Sparks"), Amanda Chadwick ("Chadwick"), Wayne Chandler ("Chandler"), Dr. Elizabeth Geiger ("Geiger"), Brandy Logston ("Logston"), Kerri Paulson ("Paulson"), Mary Bruyette ("Bruyette"), and Matt Heckman ("Heckman" and collectively, "defendants") all worked for the department at the relevant time. On July 31, 2018, Pieper filed a Second Amended Complaint (Filing No. 57) in this case seeking monetary relief from each of the defendants in their individual capacities under 42 U.S.C. § 1983 for alleged violations of his constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution during his incarceration.

Now pending before the Court is the defendants' Motion to Dismiss Second Amended Complaint (Filing No. 64) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief can be granted.[1] The defendants further argue they are entitled to qualified immunity. Pieper opposes dismissing any defendant. For the reasons stated below, the motion is granted in part and denied in part.

## I. BACKGROUND[2]

Pieper is serving state time for an assault conviction. He is currently assigned to the LCC. While in prison, Pieper joined the Peckerwood prison gang. Pieper eventually left the gang to the chagrin of the other members, some of whom threatened him. Pieper notified prison officials of the threats, including Sparks, who was then a Captain at the

---

[1]Defendants Matt Tracy ("Tracy") and Salvador Cruz ("Cruz") did not join the motion to dismiss.

[2]The Court has presented "the facts as asserted in [the Second Amended Complaint] and in the light most favorable to" Pieper. *Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 959 (8th Cir. 2014).

LCC, and Sabatka-Rine, who was then the Warden at the Nebraska State Penitentiary ("NSP").

Beginning May 9, 2007, Pieper's department classification file indicated prison staff should "contact Central Monitoring office Central manager Coordinator prior to transferring Pieper." As of October 9, 2012, his classification file noted staff should separate him by institution from Peckerwood gang members based on the perceived threat to his safety.

At LCC, Pieper was on "administration confinement" and segregation for almost four-and-a-half years in large part to protect him from other inmates. Even so, on January 7, 2011, two other inmates assaulted Pieper with weapons. Pieper was taken to the hospital to treat his injuries. While in segregation for that assault, Pieper completed several inmate-request forms describing his safety concerns.

Although the Peckerwood gang has a strong presence at the department's other institutions, the threat at LCC—due in part to Pieper's efforts—is comparatively low. The gang would send members to LCC to attempt to harm Pieper, but Pieper would persuade them to leave him alone and better themselves instead.

In 2014, the department's "clinical violent offenders program committee recommended" that Pieper participate in a "violence reduction program" ("VRP")—the most stringent violence-prevention class the department offered. Pieper understood that his participation in the VRP would require transferring him to the NSP—the only department facility which offered the VRP at that time.

Concerned for his safety, Pieper repeatedly tried in person and by letter to persuade department officials to allow him to take another class, such as Anger Management, that would not require his transfer to the NSP. Pieper believed the VRP recommendation was unnecessary and arbitrary. Many other inmates convicted of more violent crimes than

3

Pieper have received recommendations for Anger Management or other less-stringent programs.

Pieper repeatedly told Paulson, his Mental Health Practitioner at the time, and Cruz, his Unit Manager, about his safety concerns to no avail. Paulson told Pieper she would convey his concerns to Logston, the Violent Offenders Program Clinical Program Manager at Tecumseh State Prison; Geiger, the Clinical Psychologist Supervisor at the NSP; and Chandler, the Behavior Health Programs Manager at the LCC; and even speak on his behalf at a Clinical Violent Offender Review Team ("CVORT") meeting.

Between March 2014 and August 2015, Pieper also wrote several inmate interview request forms to Paulson and Chandler. In request forms dated May 12, 2014, and June 10, 2014, Pieper explained to Chandler why he should not be transferred to NSP and expressed his desire to participate in an alternative program at LCC. Chandler consistently responded that the VRP recommendation would not change. On June 27, 2014, Paulson likewise advised Pieper that the CVORT had reviewed and addressed his concerns and still recommended his participation in the VRP. No one ever called Pieper down to Mental Health to discuss his concerns.

Pieper also communicated his safety concerns to officials at the NSP. In response to a letter from Pieper, Geiger advised him that the department took his concerns seriously but "based on clinically assessed level of risk and need, the CVORT has determined that the VRP is the most appropriate treatment recommendation" for Pieper at that time. As for Pieper's safety, Geiger assured "we will continue to take all central monitoring concerns into consideration in order to determine the most appropriate way to address risk factors."

On October 27, 2014, Pieper wrote a letter to Sabatka-Rine. She too told Pieper the department took his safety concerns seriously and would review his situation to determine if any action was needed but assured him "your situation is not unique and that we have successfully managed situations similar to yours on prior occasions in an effort to

ensure . . . the opportunity to participate in recommended programming." Copies of that response were placed in Pieper's file and sent to Geiger; Peart, the Warden at LCC; and Tracy, the Unit Administrator at NSP. According to Pieper, Tracy and Rick Hargreaves, the Unit Administrator at LCC, were aware of his safety concerns if transferred to NSP.

On February 11, 2016, Chadwick, Unit Manager at LCC and Pieper's case manager, completed an institutional progress report for Pieper that noted that the CVORT recommended Pieper complete the VRP at NSP, but that he was not allowed to transfer to NSP due to central monitoring issues. Chadwick joked with Pieper about the impending transfer, telling him he would have to start over if transferred but refusing to explain to Pieper what she meant. The day Pieper was transferred, Chadwick smirked at him and said "goodluck!" as he left. Though Chadwick knew the transfer should not happen, she did not stop it.

In August 2016, one month before Pieper's transfer, an inmate named Steven Goodwin ("Goodwin") arrived at the LCC from the NSP. An ex-Peckerwood gang member like Pieper, Goodwin told Pieper that gang members at the NSP were waiting for Pieper to arrive for the VRP program so two inmates could "take him out." Pieper immediately relayed the information to Cruz, who told Pieper he would handle it.

As of September 1, 2016, Pieper's classification indicated he should "Remain 1X at LCC." Because of the department's repeated denials of his requests to remain at LCC and complete alternative programming, Pieper decided he had to accept the impending transfer to the NSP and complete the VRP, so he could become eligible for parole.

On September 22, 2016, Pieper was transferred to the NSP.[3] Tracy failed to arrange for Pieper's safety, and he was placed in general population. Within a minute after Pieper

---

[3]Pieper alleges Sheair, the Deputy Warden at LCC; Chadwick; Sparks; and Cruz actually executed the transfer.

walked into his housing area, two inmates attacked him from behind. He "suffered permanent mental and physical injuries," including a scratched retina, broken nose, punctured eardrum, partial hearing loss, headaches, and pain in his neck and spine. Pieper alleges each of the defendants was aware of the risks of transfer and should have intervened on his behalf to ensure his safety.

After the assault, Pieper was transferred back to the LCC. Not much later, Pieper learned the department would soon offer the VRP at the LCC. Pieper eventually completed the VRP program at the LCC.

Pieper filed a grievance with the department, and on July 31, 2018, filed the present suit under § 1983. Pieper reports that after filing suit, his request for transfer to the work-release center was denied and additional programming was added to his personalized plan. Pieper was instead ordered to transfer to the work-ethic camp, which again caused him to fear for his safety. Pieper protested the transfer and appealed the order. Sabatka-Rine answered his protest and commented on his personal preference but ignored his safety concerns.

Pieper refused to go. He received thirty days loss of good time for disobeying the transfer order, which was upheld on appeal. Later, Pieper was again ordered to transfer to the NSP. Although he ultimately was not transferred to the NSP because of safety concerns, Pieper maintains the attempt to transfer him there was retaliatory.

On October 1, 2018, the defendants filed the present motion to dismiss for failure to state a plausible claim. *See* Fed. R. Civ. P. 12(b)(6). The defendants also claim qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Their qualified-immunity argument likewise turns on the plausibility of Pieper's claims against them. For his part, Pieper contends the motion should be denied because, in his view, he "has alleged actual and specific facts to show

that each of the Defendants had knowledge that there was a substantial risk to [his] safety but nevertheless disregarded the same."

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." That standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The court accepts as true all factual allegations, but is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, 'it stops short of the line between possibility and plausibility'" and must be dismissed. *Id.* (quoting *Twombly*, 550 U.S. at 556-57).

### B. Deliberate Indifference

Pieper alleges the defendants were deliberately indifferent to the substantial risk of serious bodily harm he faced from other inmates upon transfer to the NSP. As Pieper sees it, the defendants "disregarded that risk by failing to take reasonable measures to abate it."

As the defendants point out, Pieper nominally alleges violations of his First, Fifth, Eighth, and Fourteenth Amendment rights, but his sole cause of action—for deliberate indifference—falls squarely within the Eighth Amendment prohibition against "cruel and unusual punishments." U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners." *Young v. Selk*, 508 F.3d 868, 871-72 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 832). A prison official violates a prisoner's Eighth Amendment rights if they are deliberately indifferent to the need to protect a prisoner from "a substantial risk of serious harm." *Farmer*, 511 U.S. at 833; *accord Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004).

"A prison official is deliberately indifferent if he 'knows of and disregards' a substantial risk of serious harm to an inmate." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Farmer*, 511 U.S. at 837). To prove deliberate indifference, a prisoner must show both (1) an objective component—that the prisoner faced a substantial risk of harm—and (2) a subjective component—that the prison official knew of yet deliberately disregarded that risk. *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

"Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk." *Reynolds*, 636 F.3d at 979 (alteration omitted) (quoting *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005)). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Walls v. Tadman*, 762 F.3d 778, 782-83 (8th Cir. 2014) (quoting *Farmer*, 511 U.S. at 844).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Vicarious liability does not apply to § 1983 actions. *Iqbal*, 556 U.S. at 676. "[E]ach

Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. To state a plausible deliberate-indifference claim under § 1983, a prisoner must plead that each prison-official defendant, through their "own individual actions, has violated the Constitution." *Id.* at 676. "[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Reynolds*, 636 F.3d at 981 (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam)).

Applying this framework to Pieper's Second Amended Complaint, the Court finds Pieper has failed to state a plausible deliberate-indifference claim against Sheair, Hargreaves, Sparks, Logston, Paulson, Bruyette, and Heckman. As to those defendants, Pieper simply has not pled sufficient factual content to permit a reasonable inference that any of them is personally and directly responsible for violating his Eighth Amendment rights. *See, e.g., Farmer*, 511 U.S. at 834 (noting a prison official who is responsible for a prisoner's safety can only be held liable if that "prison official's act or omission" causes a constitutional violation).

Even if the Court infers that those defendants had some responsibility for Pieper's safety and even if some of them—like Paulson, Bruyette, and Logston—knew he faced a substantial risk of harm upon transfer to the NSP, Pieper has not provided sufficient supporting factual allegations to show that any of those defendants deliberately or recklessly disregarded that risk or otherwise failed to reasonably respond to his safety concerns. *See Iqbal*, 556 U.S. at 683 (explaining an official cannot be held individually liable where the "complaint does not contain any factual allegations sufficient to plausibly suggest" the official herself had the requisite culpable state of mind); *Farmer*, 511 U.S. at 844 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.").

9

Pieper maintains the Second Amended Complaint is sufficient because he has broadly alleged that each defendant (1) was "deliberately indifferent to [his] risk of serious bodily harm," (2) "had knowledge that there was a substantial risk to [his] safety but nevertheless disregarded the same," and (3) "knew that [he] faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." But, without more, such blanket allegations, unsupported conclusions, and rote recitations of the elements do not suffice. *Iqbal*, 556 U.S. at 678.

With respect to Sabatka-Rine, Peart, Chadwick, Chandler, and Geiger, the Court finds—though it is close in some cases—that Pieper has, at this stage, alleged sufficient factual content, taken as true, to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In light of the foregoing,

IT IS ORDERED:
1. The defendants' Motion to Dismiss Second Amended Complaint (Filing No. 64) for failure to state a claim is granted in part and denied in part.
2. Plaintiff John W. Pieper's claims against defendants Cathy Sheair, Rick Hargreaves, Paula Sparks, Brandy Logston, Kerri Paulson, Mary Bruyette, and Matt Heckman are dismissed without prejudice.
3. The motion is denied in all other respects.
4. The remaining defendants in this case shall answer or otherwise respond to the Second Amended Complaint within fourteen days after the date of this order.

Dated this 20th day of November 2018.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge